# Troendle, et al. v. Rumley Products Company.

(Decided November 30, 1915.)

## Appeal from Christian Circuit Court.

Sales—Rescission of Contract for Breach of Warranty.—In this action by the seller, to recover the purchase price of a farm tractor, the buyer having answered and claimed the right of rescission for breach of warranty, the evidence was held insufficient to show such non-compliance with the warranty as would authorize rescission.

DOWNER & RUSSELL and W. T. FOWLER for appellants.

DOUGLAS BELL and TRIMBLE & BELL for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

T. R. Troendle bought a farm tractor and a separator or thresher from appellee, for use on his farm in Christian county, on December 19, 1911, and they were delivered to him on May 14, 1912. He executed therefor a series of notes, four of which were due September 1, 1912, and the remainder thereafter, it being stipulated by the written contract entered into between the parties that default in the payment of any of such notes should precipitate the maturity of all.

He failed to pay any of them, and the Products Company sued him in the Christian Circuit Court to recover thereon and to enforce the lien by which the notes were secured. Upon trial, the chancellor rendered a judgment in favor of the plaintiff, and the defendant appeals.

The written contract, in addition to the other usual stipulations found in such contracts of sale, provided that in case the tractor failed to pull four to six fourteen-inch plows, six inches deep, according to grade and condition of soil (four plows on heavy land or grade, six plows on level or easy land); or the equivalent of the above mold-board plows in disc plows; or if it failed to operate the separator, then all the notes so executed by the purchaser should be returned to him.

The defense was that the tractor had failed to conform to the standard of performance indicated by this provision of the contract, and the defendant asked the cancellation and return of the notes so executed by him.

More than nine hundred pages of testimony were offered upon the issues thus formed, the larger part of

which has to do with the performance of the tractor, and is decidedly conflicting.

However, the following facts are shown without contradiction: The machinery was delivered to the purchaser on May 14, 1912, and taken to his farm. It was operated there on May 15, 17, and 18. On May 21, Troendle wrote the seller that the water-pump of the engine was not working satisfactorily; and on May 23 an expert was sent, who remedied the difficulty by opening a valve. On June 3, this expert was again called to the purchaser's farm, and found that a trip-finger had slipped out of position, which he remedied in a moment's time. He was given a statement signed by the foreman in charge, which recites that the machinery was all working satisfactorily after the adjustment was made. This statement also says: "I am signing this as foreman and not in full authority, and as far as I can see the engine is all right, and the trouble was a small one. I could not understand it from book of instructions furnished. I think I will be able from now on to make all minor repairs without further assistance. The oil we have been using proved to be an inferior grade and it does not give proper lubrication."

On July 15, 16, and 17, the company's expert, Milliken, returned to the purchaser's farm to give instructions concerning the installation and use of the separator (which had not theretofore been operated), and, upon leaving, was furnished with a statement signed by Troendle himself reciting that the machinery purchased was working satisfactorily.

On August 2, Troendle wrote the Products Company that his first notes would be due September 1, 1912, and asking to be permitted to renew them until December 1, 1912. The company having declined this request for extension of time, he again wrote on August 7, explaining that the extension was asked on account of the fact that he had failed to market his tobacco. We find in the record no reply to this letter.

On August 16, Troendle telephoned the company that he was having trouble with the tractor, and a man was sent to his farm on August 17. This man, whose name was Hunt, was not an expert mechanic, but was sent because no expert was available at the moment, it being hoped that the difficulty was one of trivial importance and that he could discover it. When he got to the farm,

he learned from the negro who was operating the tractor that he had taken the gears out and replaced them as best he could. Under these conditions, as the tractor was not working properly, Hunt did not wish to undertake the job of discovering the difficulty, so he sent for Milliken.

Milliken came on August 19 and started the tractor to working again. In the course of his overhauling of the machine, he discovered a couple of screws were not in their proper places in the intake pipe. These were found in the tool box by the negro who was at that time running the tractor.

These matters had been handled by the Nashville office, but on August 18, without waiting for Milliken to come, Troendle wrote the main office of the Products Company, at La Porte, Indiana, complaining about the performance of the tractor.

In September, Hunt and a man named Coslett, from the La Porte office, went to Troendle's farm to see the tractor, and in overhauling it again found the screws mentioned above gone from their proper places in the intake pipe; and the negro again produced them, and they were replaced in their proper positions. This negro was not the man who had operated the tractor when Troendle first got it. On September 21, Troendle notified the Products Company that the tractor was a failure.

W. P. Ward, a farmer, who lived just across the road from Troendle's place, and who is about the only witness testifying on the issue who is entirely free from interest or feeling in the matter, when called by the defendant, said that during the summer of 1912 he observed this tractor being operated by Nick Browder, the first man whom Troendle had in charge of it; that he saw Browder operate it for weeks without having any trouble with it; but that the second man, Simon Anderson, appeared to have trouble in operating it; that there were about 250 acres of land plowed and 50 acres of wheat cut and threshed that summer with the tractor.

Browder testified that during the time he operated it, it gave entire satisfaction, and all the men whom the company sent to Troendle's farm to correct the troubles when complaints were made, testified that the machine was all right and doing good work, fully coming up to the stipulation of the contract relied on by defendant in respect of its performance.

The proof.. as, to the non-performance of the. tractor rested solely ˉupon the testimony of appellant ;and several of· his ꞏnegro farm laborers; and a considerable portion of·the record is devoted to ,an attack upon the credibility of appellant. and his witnesses, .and. by testimony in rebuttal of such attack.

Another considerable portion of the record. is the testimony· of experts, pro. and con, testifying concerning the merits.·and. demerits of that class of traction machinery ꞏequipped ꞏwith only one cylinder, the tractor in question being a single-cylinder machine. ꞏ

The evidence on all these issues is sharply conflicting; and while it is not entirely satisfactory, we are or the opinion that the chancellor's finding was right.

. The judgment is, therefore, affirmed.